SHERMAN, and another, Appellants, v. HEISER, Respondent.

Supreme Court

*No. 76–185. Submitted on briefs September 6, 1978.—Decided October 3, 1978.*
(Also reported in 270 N.W.2d 397.)

For the appellants the cause was submitted on the brief of *Robert E. Sutton* of Milwaukee.

For the respondent the cause was submitted on the brief of *D. Winthrop Hass* and *Churchill, Duback & Smith* of Milwaukee.

DAY, J.  This is an appeal from an order of the county court for Milwaukee County, Branch No. 8, the Hon. Donald W. Steinmetz, County Judge presiding, entered on June 11, 1976 denying the motion of appellants (Richard S. Sherman, an individual and Persianesque, Ltd., a Wisconsin corporation, hereafter Sherman) for relief from "judgment improvidently granted." The original judgment was granted against Sherman on June 17, 1975. The motion for relief from the judgment was filed on March 15, 1976, and hearings on the motion were held on May 20, 1976 and June 10, 1976.

In May, 1973, Sherman began an action against the respondent, John Charles Heiser (hereafter Heiser) to recover monies allegedly misappropriated by Heiser. Heiser, an employee of Sherman's, counterclaimed for intentional, willful and malicious failure of Sherman and Persianesque to compensate him for his services, for conversion of his property, and battery to his person by Sherman.

Following a jury trial in February of 1975, the trial court granted a judgment in favor of Sherman and Persianesque in the amount of $335.53, but declared a mistrial on Heiser's counterclaims. The trial on the counterclaims was rescheduled for June 17, 1975. The judgment docket sheet shows that Sherman and his attorney, Herbert Usow, were both present in court when the case was rescheduled.

On June 17, 1975, the day of the trial on the counterclaim, Sherman did not appear. Mr. Usow asked the court for permission to withdraw from the case stating

that he felt he could not defend it without Sherman's presence in court. He stated that he had talked to members of Sherman's family over the previous few days and had been assured that Sherman would attend. Mr. Sherman was living in Florida at the time and nothing in the record shows that he had a permanent Wisconsin address. Mr. Usow also said that he had written Sherman on two occasions, the last one being a week or ten days before the trial date. Mr. Usow told the court that he had just spoken to Mr. Sherman's sister, Linda Holub, that afternoon and that she had told him that Mr. Sherman told her that he had "an important matter involving a tennis match" and could not be in court. The court thereupon released Mr. Usow as Sherman's attorney. After Mr. Usow's withdrawal, the court permitted Sherman's reply to the counterclaim to be stricken and heard the testimony from three witnesses. The court granted Heiser judgment on the counterclaim for $7,935 actual damages and $13,900 punitive damages plus costs and disbursements for a total of $21,835.00 in damages plus costs and disbursements.

On November 18, 1975 Sherman filed the first order to show cause why the judgment should not be reopened. However, the motion was dismissed because there were no appearances for Sherman. On March 16, 1976 Sherman filed a motion for relief from the judgment on the grounds that it was improvidently granted. At a hearing on May 20, 1976 Sherman's sister, Linda Holub, denied that she had told Mr. Usow that her brother would not be in court because of a tennis commitment. In addition, Dr. Milton Freedman testified that on June 16, 1976, the day before the trial on the counterclaim, Sherman telephoned him and reported that he was suffering symptoms of acute gastroenteritis. Sherman testified at the hearing about his illness and his whereabouts during the trial. However, Sherman's counsel subsequently asked the court

to disregard both Dr. Freedman's testimony and Mr. Sherman's testimony concerning the illness in deciding the motion. Thus, the only pertinent evidence left to consider was Mr. Usow's statement about the conversation with the sister and her denial of it.

The trial court believed the testimony of Mr. Usow. In cases of conflict in testimony, it is a matter for the trier of fact to determine wherein credibility lies. Had the trial court accepted the sister's statement, that would have meant that there was no evidence of any kind in the record as to why Mr. Sherman had not shown up for the trial on the counterclaim since his evidence justifying his absence had been withdrawn at his attorney's request. The trial court thus denied the motion to reopen a judgment.

Sherman raises three issues on this appeal:

1. May an attorney for a party litigant withdraw from representation upon the day of trial without notice to his client?

2. Does it violate Wisconsin statutes and constitutional due process and equal protection to grant a "default" judgment without notice to the party against whom it is entered in a case where issue has been joined, the case set for trial by jury, and the party's attorney withdraws the day of trial without notice to the client?

3. Should the judgment be reopened in the interest of justice because it was excessive or oppressive?

Heiser, on the other hand, sees the issue as being merely: did the court abuse its discretion in refusing to grant the motion to reopen the judgment?

Whether the issues raised by Sherman were more properly raised in a direct appeal from the judgment rather than an appeal from the order denying the motion to reopen is not before us because it was not raised by the respondent Heiser, who replied to the merits. Sec. 807.-07 (1), Stats.: *Knight v. Heritage Mut. Ins. Co.,* 71 Wis. 2d 821, 239 N.W.2d 348 (1975).

We hold under the facts in this case that where the court permitted the attorney to withdraw from the case at the time of trial because of the client's absence and where no prior notice of intent to withdraw had been given to the client that Sherman's reply to the counterclaim should have been allowed to stand and that a new date should have been set for the trial with reasonable notice to Sherman to permit him to get other counsel.

The Code of Professional Responsibility provides that "a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules." Appendix to Chapter 256, Wis. Stats. DR 2–110(a)(2).

The general rule is that although the lawyer has justifiable cause for withdrawing from the case, he is not entitled to withdraw until the client has been given reasonable notice and opportunity to obtain substitute counsel. 7 C.J.S., *Attorney and Client*, sec. 110.

Heiser's brief cites a number of cases for the proposition that the authority of counsel to act for his client in a proceeding is to be presumed. *Reinkey v. Wilkins*, 172 Wis. 515, 179 N.W. 751 (1920) ; *Schlitz v. Meyer*, 61 Wis. 418, 21 N.W. 243 (1884) ; *Hurst et al. v. Gulf Creosoting*, 163 Miss. 512, 141 So. 346 (1932) ; *Gardiner v. May*, 172 N.C. 192, 89 S.E. 955 (1916). However, those cases deal with the authority of the attorney to appear for the client or to consent to judgments against his client. None of them deal with the situation in which the lawyer seeks to withdraw from employment.

In criminal cases, courts have held that attorneys who decided not to appeal their clients' cases were not entitled

to withdraw without notice to the client because such action would "frustrate forever the right of the client to protect his vital interests." *Atilus v. United States*, 406 F.2d 694, 696 (5th Cir. 1969) ; also *The Florida Bar v. Dingle*, 220 So.2d 9 (1969).

*Stafford v. Dickison*, 46 Haw. 52, 374 P.2d 665 (1962) presented the case of an absent client. On the day of the pre-trial conference, neither the defendant nor his attorney were present. When contacted by telephone, the lawyer told the court he intended to withdraw from the case because of lack of cooperation from his client. His last contact with the client had been almost two years earlier when he had written to him about an unrelated matter concerning his arrears in support payments. The client's last known address had been in California. The lawyer was allowed to withdraw from the case, and a default judgment was entered against his client that day.

The appellate court said that the lower court had abused its discretion in permitting the attorney to withdraw.

"The case had been at issue for nearly three years, during which time counsel must have known that the case was working its way up the calendar. For two years counsel had been out of touch with his client, and even if we assume that the client's failure to answer the letter about the arrears in support payments and embarrassed counsel, that moreover the client was neglectful in failing to keep in touch with his attorney when he must have known he had this pending case, those circumstances did not excuse what was done. Though an attorney be warranted in withdrawing, he should do so only on reasonable notice to his client, allowing him time to employ another lawyer." *Id.* at 61.

The start of the trial in the instant case was delayed because the attorney was completing a trial in another court that day. Judge Steinmetz stated that the attorney was under pressure from the court to start this trial that

afternoon because it had been scheduled to start at 9:00 a.m.

The attorney stated that he could not defend the counterclaim without his client's presence. He had called his office during the course of the day to see if his client had telephoned, and when he entered the courtroom and saw that his client was not present, he called his client's sister in an effort to reach him. At that time, the sister allegedly said that her brother would not be in court because of a tennis commitment, a statement she later denied making.

This is not a case of the attorney having withdrawn, on his own, without notification to the court, but on the contrary, this attorney did appear and state his reasons for asking to be allowed to withdraw from the case. However, the trial court's granting of permission to withdraw left Mr. Sherman without any representation whatever. We hold that to comport with the requirements of due process, under the State and Federal Constitutions, the court should have let the answer stand and set a new trial date with notification to Mr. Sherman to permit him to retain the services of an attorney but upon such terms as the court would in the exercise of its discretion deem appropriate under the circumstances. Terms are justified because there is nothing in the record giving any justifiable excuse for Sherman's failure to attend the trial when, at least in the opinion of his attorney, his presence was necessary to defend from the counterclaim.

Both parties realize that this was not a true case of "default." Sec. 270.62 (now 806.02), Stats., provided: "(1) A default judgment may be entered as provided in this section if no issue of law or fact has been joined and if the time for joining issue has expired." In this

case, issue had been joined. A reply had been served and filed to the counterclaim.

By Supreme Court order effective January 1, 1977, there was added to the default judgment statute subsection (5) which provides as follows:

"806.02. **Default Judgment.** . . .(5) A default judgment may be rendered against any defendant who has appeared in the action but who fails to appear at trial. If proof of any fact is necessary for the court to render judgment, the court shall hear the proof."

Even if this section had been available at the time of this hearing, it would not apply to the facts in this case because Sherman did "appear" at trial by the fact that his counsel appeared. Sec. 256.27 (1975 Stats.), (now 757.27) provides:

"every person of full age and sound mind may appear by attorney in every action or proceeding by or against him in any court except felony actions, or may, at his election, prosecute or defend the same in person."

The trial judge's opinion points out that courts cannot allow litigants to control judicial calendars. This court is in full agreement. But the trial court was not left powerless in this case. The court could have refused to allow the attorney to withdraw from the case and let the trial proceed.

In the case before us, the trial court had the alternative of ordering Sherman's counsel to try the case as best he could. The attorney testified at the hearing that he had told his client that he felt he had a substantial and meritorious defense and he also stated that he, the attorney, was prepared to defend the action had the client been present. In the case of *Hauer v. Christon,* 43 Wis.2d 147, 154, 168 N.W.2d 81 (1969), the defend-

ant was an attorney who appealed from a default judgment entered against him for his failure to be prepared to try his case on the day of trial. The judge struck the defendant's answer and invited and granted the plaintiff's motion for a default judgment. This court reversed the judgment saying that while the trial court has inherent power to strike a pleading, there is a denial of due process if it is done as a punishment or contempt. In the case at bar, however, the trial court made it clear that the striking of the defendant's reply was not done as a contempt "but rather due to an admission by (Sherman) of want of merit in his asserted defense to the counterclaim . . . (Heiser's) proof uncontested was sufficient for the judgment when the plaintiff abandoned his defense by failing to appear for the trial. To rule otherwise would mean the litigant controls court calendars and courts must meet their every whim . . ."

But in the case before us, Sherman had not failed to "appear," since he was entitled to and did appear by his attorney. In the *Hauer* case, this court held that the trial court abused its power in striking the defendant's answer since there was no established rule of the Milwaukee county court providing such a sanction for failure to be ready for trial. Furthermore, this court found it ". . . questionable whether such a rule would meet constitutional requirements of due process when it is possible to afford such a defendant the right to try his case as best he can." Id. at 153.

To summarize, we hold that the trial court had two alternatives. Under the facts presented in this case, where the court permits an attorney to withdraw from employment on the day of trial without notice to the client, due process requires that the trial court let the answer stand and set a new trial date upon such terms as appear appropriate under the circumstances. In the

alternative, the trial court may deny the attorney permission to withdraw and order him to try the case as best he can. We can understand the frustration of the trial court and counsel in a case such as this one, where the party has never offered any justifiable excuse for failing to be present at trial. The most generous interpretation that could be given to Sherman's action is that he was willing to let his attorney try the case without him. This he had a right to do. But due process considerations constrain us to hold that where the attorney is permitted to withdraw the day of trial without notice to the client, the proper procedure is to grant a continuance in the case and set a new trial date. We emphasize that the lack of notice to the client that the attorney would not proceed on the trial date in the client's absence is of particular importance in this case.

We hold that the striking of the reply to the counterclaim and proceeding as in a default constituted an abuse of judicial discretion under the facts of this case. We therefore reverse the order denying the motion to vacate the judgment with directions to the trial court to vacate the judgment on such terms as the court in its discretion deems appropriate in the circumstances.

Because we conclude that the judgment should be vacated, we do not reach the question of whether the damages granted were excessive or oppressive.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion. No appeal costs.