CRAFT *v.* BURROW, et al.

No. 40223 October 8, 1956 89 So. 2d 722

*Arrington & Arrington,* Hazlehurst, for appellant.

*Sebe Dale, Jr.*, Columbia, for appellees.

ETHRIDGE, J.

This suit originated in the Chancery Court of Marion County, in the nature of a bill of review to set aside a partition sale of land. The questions are (1) whether the consent decree approved in good faith by appellant's attorney for her is binding on her, although entered without her knowledge, and (2) whether appellant Janie Mae Craft, who was complainant below, is thereby estopped from attacking the sale because of defects in the order of sale. The chancery court sustained the demurrer of appellees J. C. Burrow and C. M. Thomas, who were defendants in the trial court. We affirm that action.

This consolidated suit originated as two separate actions, but on motion of appellant both were consolidated. The bill made as an exhibit all of the proceedings in chancery cause No. 9819, which was the partition proceeding resulting in the sale to defendants. The bill charged that the decree ordering the sale and the decree confirming it were void. One allegation was that the property was appellant's homestead on the death of her husband, and the chancery court in the partition proceedings erred in finding that she had no homestead rights therein; but appellant does not contend that the trial court was incorrect in refusing to go behind the finding in the partition decree that appellant was living elsewhere and the property was not her homestead. So we do not consider further that averment in the present bill. Principally, the bill of complaint charges that the vacation decree of September 10, 1954, and the decree of December 17, 1954, confirming the commissioner's sale, are void, because the decree ordering the sale was made in vacation on a date not precedently set for such decision and without notice to appellant.

The partition proceedings, Cause No. 9819, made a part of the instant bill, reflect that on October 19, 1953,

Burrow and Thomas filed in the Chancery Court of Marion County a bill to partition by sale the 40 acres in question. It charged that appellant's husband, Bennett Craft, died intestate, the owner of the 40 acres, leaving as his sole survivors his widow, appellant Janie Mae Craft, and his daughter, Bennie Craft Brasley; that each of them became owners of one-half undivided interest in the land, and on September 7, 1953, the daughter, Bennie, conveyed her one-half interest to Burrow and Thomas, the present appellees. The bill charged that the land was unimproved and only partly cultivated, consisting of hills and hollows, and incapable of partition in kind, and prayed for a partition by sale. Personal process was served on defendant Janie Mae Craft, who by her attorney filed a motion for additional time to plead. It was sustained. Defendant by her counsel then filed an answer and a demurrer. On February 18, 1954, the chancellor made an order by agreement of the parties taking the cause under advisement for a hearing in vacation and entry of final decree, ''at a time and place to be agreed upon between court and counsel''. Apparently the cause was tried in vacation in July 1954. On July 26, 1954, the chancery court signed a partition decree, holding that the land was not a part of Janie's homestead, ordering a partition in kind, appointing three commissioners to do this and to report their action to the court in vacation on September 3, 1954, for confirmation or such other and further proceedings as the court might find necessary and proper.

On August 4, 1954, the commissioners signed their oaths, and on August 30 filed their report. This report stated in detail their examination of the land and their conclusion that it was not susceptible to partition in kind, and recommended that the land be sold. This report was not filed five days before the return date of September 3 as required by Code of 1942, Sec. 1384, and the court made no order on September 3 setting the report for further consideration at a later day, as should have been done under Code Sec. 1232. Nevertheless, on

September 10, 1954, in vacation, the court made a decree accepting the report of the commissioners and ordering that the land be sold. It directed that the commissioner sell the land at public sale on October 11, and report his action for confirmation at the November 1954 Term.

The record in the partition proceeding, Cause No. 9819, next reflects a proper publication of notice of public sale for October 11, and on that date the property was sold to Burrow and Thomas for $750. The sale was not confirmed at the November term, but on November 11 the court entered the following decree: ''Upon the agreement of parties and their counsel, and with the consent of the court, this cause is hereby taken under advisement for the presentation and consideration of Commissioners Report of Sale in Vacation, and for such other and further proceedings as may thereafter be necessary at such time and place as may be agreed upon by counsel for both sides and approved by the court.''

The next step in the partition proceeding occurred in vacation on December 17, 1954, when the chancellor signed a decree confirming the commissioner's sale to Burrow and Thomas, and directing delivery of a commissioner's deed to them and distribution of proceeds of the sale after payment of costs. That decree further adjudicated: ''The court specifically finding that all parties to this proceeding were represented in court by their respective attorneys of record at the confirmation hearing and expressly consented to the confirmation of the said sale as made and reported, and the court being of such opinion and so finding.'' The commissioner then executed a deed on that same date to Burrow and Thomas, conveying to them the 40 acres.

As previously stated, the foregoing proceedings in the partition suit, Cause No. 9819, were made an exhibit to the present bill in the nature of a bill of review. The defendants-appellees, Burrow and Thomas, filed a general demurrer. The chancery court sustained it and dismissed the bill with prejudice. The trial court held that it would

not look behind the decree of July 26, 1954, on the question of the homestead rights of complainant. It found that there were some irregularities with reference to the date for hearing the report of sale, but that the decree of November 11 was made in term time by agreement of the parties and their attorneys, both of them were present in court, and under this agreed decree the court later properly considered in vacation the commissioner's report of sale at a time agreed upon by counsel for both sides and approved by the court; and that the parties by their attorneys expressly consented to the confirmation of the sale by the decree of December 17, 1954. Hence the chancery court said that all parties had notice, agreed to and ratified the sale in the confirmation decree, and by necessary inference complainant was estopped to now contest the decree confirming the sale.

This bill in the nature of a bill of review does not allege that the consent decree of December 17, 1954, was obtained by fraud or mutual mistake. It charges that the decree of September 10 ordering the sale and the confirmation decree of December 17, were obtained without appellant's personal knowledge or consent, and that she had no knowledge of the sale "until recently", some eight months later. A consent decree is binding on the consenting parties, and cannot be reviewed except on a showing that consent was obtained by fraud or mutual mistake. 19 Am. Jur., Equity, Sec. 407; Griffith, Miss. Chancery Practice (2d Ed. 1950) Sec. 618. The present partition suit is different from that in Guthrie v. Guthrie, 84 So. 2d 158 (Miss. 1955), where the bill charged both mutual mistake and fraud, and it was held that it was good against a general demurrer.

There exist defects and irregularities in the partition proceedings: (1) The failure of the commissioners to file their report five days prior to the date set for confirmation; (2) the chancellor's failure on the appointed date, September 3, to consider the report or to reset it for a later date; and (3) the entry of the decree direct-

ing a partition by sale on September 10, rather than on September 3 or a later vacation date to which the cause was reset. Under Section 1232, the chancellor on September 3 should have made a special order resetting the matter for hearing at a later time.

. After the sale was made on October 11, the case then came before the chancery court at its November term. By decree of November 11, "upon the agreement of parties and their counsel" the court took the matter under advisement for consideration in vacation of the commissioner's report of sale. In other words, at the November term the decree of November 11 recites that the parties and their counsel agreed that the court should take the matter under advisement for consideration in vacation of the commissioner's report of sale. On December 17 the court confirmed the sale. It disallowed attorney's fees and "specifically" found that "all parties to this proceeding were represented in court by their respective attorneys of record at the confirmation hearing and expressly consented to the confirmation of the said sale as made and reported . . ." In other words, the parties to the partition suit were represented by counsel at the confirmation hearing, and agreed upon a consent decree which confirmed the sale as made to appellees.

Certainly the decree of September 10 was irregular and defective; but whether it was void or voidable does not affect our decision. Cf. 40 C. J. S., Judgments, Sec. 178, p. 317; 50 C. J. S., Judicial Sales, p. 591. ██ █ A consent decree has two main aspects: it is a contract between the parties to the suit, and it is an adjudication and decision by the court executing it. If the action of appellant's attorney in consenting to the decree was within his implied or apparent authority, then, disregarding the decree of September 10, appellant through her representative could agree to a decree approving the sale. The question is whether the consent of appellant's counsel to the decree of December 17 is binding upon her in

the absence of fraud or mutual mistake, even though she had no personal knowledge of its approval by her attorney. We think it is.

■■ ■ The general rule relative to an attorney's authority to agree to a decree affecting his client is set forth in 7 C. J. S., Attorney and Client, Sec. 86: ''Although some sufficient grant of authority is essential, an attorney employed to represent a party in litigation may usually confess, or consent to, judgment against his client if he has been expressly authorized to do so; and, according to many decisions, he has, merely by reason of his employment, the implied or apparent authority to take such action if he acts in good faith and without fraud or collusion, even in inferior courts not courts of record, and even though the judgment is based on, or is in effect, a compromise or settlement of the client's rights or cause of action, unless there is fraud or a violation of the express instructions or wishes of the client to the knowledge of the adverse party or his counsel.''

■■ ■ Two Mississippi cases have adopted this rule, that an attorney has the implied or apparent authority to consent to a decree against his client, if he acts in good faith and without fraud or collusion. In Cocke v. Wilson, 161 Miss. 1, 134 So. 686 (1931), the consent judgment was entered without the client's knowledge. This Court said: ''An attorney, when agreeing to the entry of a judgment against his client, is presumed to be acting with the client's consent, and a judgment entered in accordance with such an agreement is ordinarily conclusive against the client.''

Hurst v. Gulf States Creosoting Co., 163 Miss. 512, 141 So. 346 (1932), involved the entry in vacation by the circuit court of a judgment against a plaintiff, agreed to by plaintiff's attorney but without his personal knowledge or consent. It was held to be valid, for these reasons: ''An attorney agreeing to a judgment against his client is presumed to act with his client's consent, and

such judgment is ordinarily conclusive against the client. Some courts hold that this presumption is rebuttable in a proceeding instituted to set aside the judgment by a showing that the movant has a meritorious claim or defense, as the case may be. However, there is no decision of our court holding that such a presumption is rebuttable. If rebuttable, the effort to rebut must fail in this case for the reason that there is no showing by appellants that they had a meritorious case. In order to set aside a judgment, the parties seeking to set it aside must show a meritorious claim or defense, as the case may be. A showing simply that the plaintiff or defendant believes he has a meritorious claim or defense is not sufficient . . . . . When the judgment was agreed on the appellee had a right to assume that appellants' attorneys of record had authority to do what they did.''

 These decisions are pertinent here. When appellant's attorney agreed to the confirmation decree of December 17, he is presumed to have acted with his client's consent, and the decree is ordinarily conclusive against the client in the absence of a showing of fraud or mutual mistake. The bill of complaint makes no such charges. Appellees had the right to assume that appellant's attorney of record had authority to do what he did. See Code of 1942, Sec. 1301. The consent decree of December 17 is binding upon appellant. This rule of course emphasizes the great responsibility placed upon an attorney in representing his client.

 Furthermore, in order for a bill of review to warrant reopening a case and setting aside a final decree, appellant must allege and show that she has a meritorious suit or defense, and, as was stated in both the Cocke and Hurst cases, the facts on which the claim or defense is based must be charged in sufficient detail to show that the assertion has merit. Griffith, Miss. Chancery Practice (2d Ed. 1950) Sec. 637. A general averment in the bill that lands can be partited in kind does not comply with that requirement.

674 

For all of these reasons the chancery court was correct in sustaining the demurrer to the consolidated bills of complaint. That decree is affirmed, and the case is remanded for further proceedings consistent with this opinion.

Affirmed and remanded.

*Roberds, P. J., and Hall, Lee, and Holmes, JJ.,* concur.